Filed 3/12/21  P. v. Stroupe CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>DAYVON TERRELL STROUPE,<br><br>        Defendant and Appellant. | C086068<br><br>(Super. Ct. No. 14F07830) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>SHAQUILLE HUSTON,<br><br>        Defendant and Appellant. | C086248<br><br>(Super. Ct. No. 14F07830)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

1

THE COURT:

It is ordered that the opinion filed in these cases on February 24, 2021, be modified as follows:

On page 18, remove the first full sentence which states, "In addition, the jury found Stroupe used a firearm, which is consistent with a jury finding that he was suspect number three."

This modification does not change the judgment.

The petition for rehearing is denied.

FOR THE COURT:


_____/S/_____
MAURO, Acting P. J.


_____/S/_____
MURRAY, J.


_____/S/_____
RENNER, J.

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>DAYVON TERRELL STROUPE,<br><br>        Defendant and Appellant. | C086068<br><br>(Super. Ct. No. 14F07830) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>SHAQUILLE HUSTON,<br><br>        Defendant and Appellant. | C086248<br><br>(Super. Ct. No. 14F07830) |

1

Defendants Dayvon Terrell Stroupe and Shaquille Huston, with two other perpetrators, robbed Vincent Amaya and Alex A. of marijuana and an amplifier. During the commission of the robbery, Vincent was shot and killed. Following a single trial with separate juries, the juries convicted Stroupe and Huston of first degree murder on a felony-murder theory with a special circumstance of robbery-murder, and the trial court sentenced them to life without the possibility of parole.

Stroupe and Huston now assert the following contentions in this appeal:

I. Stroupe contends the trial court abused its discretion in admitting, at Huston's request, the facts underlying his 2011 juvenile adjudication for robbery, for which an offer of proof was made in this case that during the 2011 robbery Stroupe used a firearm and told the victim to empty his pockets. We conclude the trial court did not abuse its discretion because the facts of the 2011 robbery as presented in the offer of proof were similar to the facts of this case and were relevant to determining whether Stroupe was the perpetrator who used a firearm and told the victim to empty his pockets.

II. Stroupe and Huston contend the evidence was insufficient to support the verdicts in several ways. (A) Huston argues the evidence was insufficient to support a finding that he aided and abetted a robbery; (B) Huston argues the evidence was insufficient to support a finding that he was a major participant who acted with reckless indifference to human life; and (C) Stroupe argues the evidence was insufficient to support a finding that he was a major participant who acted with reckless indifference to human life. We conclude the evidence was sufficient to sustain the convictions and special circumstance findings.

III. Stroupe and Huston contend the instructions given to the juries were conflicting regarding the mental state required to support the robbery-murder special circumstance. We conclude the trial court's instructions were correct and did not mislead the jury.

IV.  Stroupe contends the trial court erred in giving an instruction concerning eyewitness identification testimony because there was no evidence he was identified by an eyewitness and the instruction created an inference there had been such an identification of Stroupe without any basis in the record.  We conclude there was no prejudice even if the trial court erred in giving the instruction.

V.  Huston contends we must strike the $400 parole revocation fine under Penal Code section 1202.45[1] because he was sentenced to life without the possibility of parole.  The Attorney General agrees and so do we.  Huston's sentence does not provide for a period of parole.

VI.  Huston contends the abstract of judgment in his case must be corrected because it incorrectly indicates he was sentenced under the three strikes law.  The Attorney General agrees and we do too.

Accordingly, with regard to Stroupe, we will affirm the judgment.  As for Huston, we will modify the judgment to strike the parole revocation fine, affirm the judgment as modified, and direct the trial court to amend and correct Huston's abstract of judgment.

BACKGROUND

Stroupe lived in a duplex on Gardendale Road in Sacramento.  His friends often congregated there to smoke marijuana, eat, and drink.  On November 17, 2014, Stroupe, Huston, Antwain West, and Gregory Cooper were at Stroupe's duplex smoking marijuana.[2]  Eventually, they ran out of marijuana, and Huston said he knew where to get some more.

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  Each of the men involved in the crimes went by a nickname:  Stroupe was "Day"; defendant Huston was "Shakeem"; Antwain West was "Twan" or "Fat Boy" or "Fat Mob"; and Gregory Cooper was "Tiny."

3

Huston had a gun with him at Stroupe's duplex.  Huston's girlfriend, Briesha M., stole her father's semiautomatic handgun.  She later told detectives it was the firearm involved in the crimes.  Huston told Briesha the plan was to take the gun and commit a robbery to get some marijuana.

Huston, Stroupe, West and Cooper went to obtain the marijuana.  Huston had contacted Vincent Amaya asking to buy marijuana.  Vincent and Alex A. sold marijuana together.  Vincent and Alex drove to an apartment complex in response to Huston's calls.  Vincent and Alex arrived in Vincent's Acura, which had a subwoofer and amplifier screwed into the trunk.  At the apartment complex, four black men robbed Vincent and Alex of the amplifier and marijuana, and Vincent was shot and killed.

### A

Detective Mark Johnson interviewed Alex in the early morning hours after Vincent was killed.  At trial, Alex claimed not to remember many of the details of that night.  Therefore, his statement to the detective provided important facts at trial.

In his interview with Detective Johnson, Alex said four black men were involved in the robbery and murder.  In Alex's interview with the detective and in the trial court, the perpetrators were referenced as suspect numbers one through four.  Alex said suspect number one approached Vincent's car.  Suspect number one was dark-skinned, skinny, five feet, eight inches tall, and about 19 or 20 years old, wearing a solid gray or white hoodie.  The parties agree in their briefing that suspect number one was Huston.  Thus, according to Alex, Huston approached the Acura, and Vincent told him to get in the backseat, which Huston did.  Huston said he needed a "quarter," meaning marijuana.  Vincent said he had it, but Huston stalled for time until suspect number two approached the Acura at the front passenger window.  Suspect number two was light-skinned, fat, five feet, six inches tall, with an Afro in a bun, and wearing a gray sweater and hoodie.  The parties agree in their briefing that suspect number two was Antwain West.

4

According to Alex, West asked whether Vincent and Alex had marijuana. Vincent was sitting in the driver's seat and Alex was sitting in the front passenger seat. West pointed a chrome revolver at Alex and Vincent and told them not to move. Huston also pulled out a handgun and said, "I don't want you dead, but I wouldn't waste any time." Vincent responded by getting out of the car and starting to go around the front of the car, swearing at West and Huston. West shot Vincent and then ran away.

After the shooting, two other black men came from behind other cars. One of them was suspect number three, whom Alex described as dark-skinned, six feet tall, skinny, with a short Afro and wearing a black hoodie. The prosecutor argued to the jury that suspect number three was Stroupe. Later, in connection with Stroupe's sufficiency-of-the-evidence contention, we will discuss whether the jury could have determined Stroupe was suspect number three.

Suspect number three had a handgun and approached the passenger side of the Acura. He told Alex to get out of the car and not to make any sudden movements or he would shoot him. When Alex was out of the car, suspect number three told Alex to empty his pockets. Alex showed suspect number three that his pockets were empty, and suspect number three had Alex take off his belt. Suspect number three then tried to pistol whip Alex, but he missed.

Alex said Huston jumped into the front seat of the Acura and put the car in reverse, crashing into another car. He then put the car in drive and jumped out as it rolled forward into a different car. Huston opened the trunk and took the amplifier; suspect number three looked inside the Acura.

B

In addition to Alex's interview with Detective Johnson, other evidence was presented at trial. Detective Shawn Ayers testified Alex told him suspect number four was wearing black clothing and looked through the Acura. Testing of the Acura revealed

5

Stroupe's and Huston's palmprints on the car. Huston told Briesha M. that he took the marijuana and ran and that someone he knew was killed during the robbery.

Huston did not testify, but he admitted in questioning by Detective Mark Johnson after his arrest on November 20, 2014, three days after the crimes, that he was involved in the crimes. He was to meet Vincent and planned to grab the marijuana and run, but West unexpectedly approached the car and eventually shot Vincent.

Detective Ayers interviewed Stroupe on February 25, 2015, three months after the crimes. Stroupe told the detective that it was supposed to be a robbery, but it turned into something else. Huston put the whole thing in motion. The four men approached the apartment complex together, and initially two of them approached the car while two of them (including Stroupe) stayed back.

Stroupe testified Huston told him to stay in front of the apartment complex because the person Huston was buying from did not deal with people he did not know. While he was waiting in front of the apartment complex, Stroupe heard gunshots, so he ran away. When he returned to his duplex, the other three men were already there. They had marijuana and a white, powdery substance. Huston and Cooper were arguing, and Huston said, "It went bad."

Vincent died from the wounds inflicted.

C

The trial court instructed the Huston jury on homicide solely on a felony-murder theory. The jury convicted Huston of first degree murder, with a special circumstance that the murder was committed during the commission of a robbery. (§§ 187, subd. (a), 190.2, subd. (a)(17).) However, the jury found not true an allegation that Huston personally used a firearm. (§ 12022.53, subd. (b).) The jury also convicted Huston of robbery, again finding not true a personal-firearm-use allegation. (§§ 211; 12022.53, subd. (b).)

6

The trial court instructed the Stroupe jury on homicide solely on a felony-murder theory. The jury convicted Stroupe of first degree murder, with a special circumstance that the murder was committed during the commission of a robbery. (§§ 187, subd. (a); 190.2, subd. (a)(17).) The jury found true an allegation that Stroupe was armed with a firearm. (§ 12022, subd. (a)(1).) The jury also convicted Stroupe of robbery, again finding true an allegation that he was armed with a firearm. (§§ 211; 12022, subd. (a)(1).)

The trial court sentenced Huston to life without the possibility of parole for the first degree murder with the special circumstance. It also sentenced Huston to the lower term of two years for the robbery, but stayed sentence under section 654.

The trial court sentenced Stroupe to life without the possibility of parole for the first degree murder with the special circumstance, with an additional one-year term for being armed with a firearm. It also sentenced Stroupe to the middle term of three years for the robbery, stayed that sentence under section 654, imposed an additional year for being armed with a firearm, and stayed that sentence too under section 654.

DISCUSSION

I

Stroupe contends the trial court abused its discretion in admitting, at Huston's request, the facts underlying his 2011 juvenile adjudication for robbery, for which an offer of proof was made in this case that during the 2011 robbery Stroupe used a firearm and told the victim to empty his pockets.

Before trial, the trial court, after completing an analysis under Evidence Code section 352, granted the prosecution's motion to impeach Stroupe with his prior juvenile adjudications for burglary in 2010 and for robbery with a firearm in 2011, limiting reference to the robbery as a "felony of moral turpitude in 2011." During direct examination of Stroupe, however, Stroupe's attorney asked Stroupe whether he had juvenile adjudications for burglary and robbery, not limiting reference to the 2011

7

robbery as a "felony of moral turpitude." Stroupe responded affirmatively. After Stroupe's direct examination testimony, counsel for Huston sought the trial court's permission to question Stroupe about the details of the 2011 robbery. Counsel for Huston noted that the facts were similar to this case because in the 2011 case Stroupe used a firearm and told the victim to empty his pockets. Through such questioning, counsel for Huston sought an inference that Stroupe, not Huston, was the perpetrator with a gun in this case based on the similar crime in 2011. The trial court ruled that the facts of the 2011 robbery were admissible because they were relevant and not inadmissible under Evidence Code section 352. In the questioning of Stroupe by Huston's attorney, Stroupe admitted that during the 2011 robbery he used a firearm, but he denied telling the victim to empty his pockets.

Stroupe now claims the facts of the 2011 robbery were irrelevant and inadmissible with respect to credibility and insufficiently probative with respect to whether Stroupe was the perpetrator who pointed a firearm at Alex and told him to empty his pockets. Based on this reasoning, Stroupe asserts that admission of the facts of the 2011 robbery was an abuse of discretion.

Before we begin the analysis of Stroupe's assertion, we note that Stroupe does not contend the evidence was inadmissible because it involved a prior juvenile adjudication. We also note that Stroupe denied telling the 2011 victim to empty his pockets. Thus, there was no evidence the statement was made in connection with the 2011 robbery conviction, and Stroupe provides no authority that asking a question is tantamount to introducing evidence. To the contrary, the trial court instructed the jury that attorney's questions are not evidence. Therefore, the only circumstance from the 2011 robbery conviction that was introduced into evidence during the questioning by Huston's counsel was that Stroupe used a firearm in that robbery. Nevertheless, in our review of the instant appellate contention, we may still consider the relevance of whether Stroupe told the 2011 robbery victim to empty his pockets because that purported fact was presented to

8

the trial court as an offer of proof to aid the trial court to make its ruling. (See *People v. Valdez* (2004) 32 Cal.4th 73, 109 [trial court's evidentiary ruling reviewed under offer of proof].)

Evidence of a person's character is inadmissible to prove conduct on a specific occasion. (Evid. Code, § 1101, subd. (a).) However, Evidence Code section 1101 does not prohibit admission of relevant evidence, such as to prove identity. (Evid. Code, § 1101, subd. (b).) "Evidence of uncharged crimes is admissible [under Evidence Code section 1101] to prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402-403.)" (*People v. Kipp* (1998) 18 Cal.4th 349, 369.)

When an issue of fact is whether the defendant, rather than some other person, committed the crime charged, evidence that the defendant committed other similar crimes is admissible to establish the defendant's identity as the perpetrator of the crime charged. (*People v. Roach* (1957) 148 Cal.App.2d 364, 368.) Here, it is possible to conclude the trial court did not abuse its discretion in admitting the evidence because the offer of proof indicated that in 2011, Stroupe used the same words he used in the current crime. But we need not make such a determination because any error was harmless. The only additional evidence introduced because of the trial court's ruling was that Stroupe used a firearm in the 2011 robbery. As part II.C.1 of this opinion establishes, sufficient evidence supports his conviction and it is not reasonably likely Stroupe would have obtained a more favorable result if the evidence had not been admitted. (See *People v. Watson* (1956) 46 Cal.2d 818, 836 [evidentiary error harmless under state law unless it is reasonably probable that a result more favorable to defendant would have occurred absent error].)

II

Stroupe and Huston contend the evidence was insufficient to support the verdicts in several ways. (A) Huston argues the evidence was insufficient to support a finding

9

that he aided and abetted a robbery; (B) Huston argues the evidence was insufficient to support a finding that he was a major participant who acted with reckless indifference to human life; and (C) Stroupe argues the evidence was insufficient to support a finding that he was a major participant who acted with reckless indifference to human life.

In reviewing a claim of insufficiency of evidence, we view the evidence in the light most favorable to the judgment and presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence. (*People v. Perez* (2010) 50 Cal.4th 222, 229 (*Perez*).)

A

Huston argues there was insufficient evidence that he intended to aid and abet the robbery underlying the felony-murder conviction. He claims that, at most, the evidence shows he intended to take Vincent's marijuana without the use of force or fear, and therefore he was not engaging in a robbery at the time Vincent was killed, and he cannot be criminally liable for felony murder.

Huston's argument relies on the fact that the jury did not find true the enhancement allegations that he used a firearm in the commission of the murder or robbery. He asserts the jury necessarily found that West shot Vincent. But Huston's premise, for which he cites no authoritative support, is false.

"[A]n inherently inconsistent verdict is allowed to stand; if an acquittal of one count is factually irreconcilable with a conviction on another, or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, effect is given to both." (*People v. Santamaria* (1994) 8 Cal.4th 903, 911, citing *United States v. Powell* (1984) 469 U.S. 57 [83 L.Ed.2d 461].) "When a jury renders inconsistent verdicts, 'it is unclear whose ox has been gored.' [Citation.] The jury may have been convinced of guilt but arrived at an inconsistent acquittal or not true finding 'through mistake, compromise, or lenity. . . .' [Citation.] Because the defendant is given the benefit of the acquittal, 'it is neither irrational nor illogical to require her to accept the

10

burden of conviction on the counts on which the jury convicted.' [Citation.]"
(*Santamaria,* at p. 911.)

In *People v. Nunez* (1986) 183 Cal.App.3d 214, 225-228, the court applied the inconsistent-verdicts rule to an enhancement finding. "A jury's finding on an alleged enhancement that an accused was not armed with a firearm or did not personally use a firearm does not necessarily mean that the accused was not a direct perpetrator of the crime." (*Id.* at pp. 225-226.)

Huston correctly notes that, to be guilty of felony murder based on robbery, the defendant must have intended to commit a robbery or aid and abet the commission of a robbery before or at the time of the killing. (CALCRIM No. 540B.) Here, however, there is substantial evidence that Huston intended to rob Vincent and Alex before or at the time West shot Vincent. Huston focuses on his statements to Detective Johnson three days after the killing that he only intended to grab the marijuana and run, arguing the prosecution "did not present any evidence that directly controverted or undermined [Huston's] description of his plan to grab Vincent's marijuana and flee without the use of force or fear."

To the contrary, there was substantial evidence of an intent to use force or fear to obtain the marijuana (that is, commit a robbery) before or at the time West shot Vincent. Stroupe said it was supposed to be a robbery from the beginning. Huston had a gun at Stroupe's duplex, and he produced the gun as soon as West approached the car. Huston said, "I don't want you dead, but I wouldn't waste any time." Briesha M. testified that she gave Huston a gun that was involved in the crimes and that Huston told Briesha the plan was to take the gun and commit a robbery to get some marijuana. Even if there was evidence that Huston may have originally planned to take the marijuana without force or fear (evidence such as Huston's statement to Detective Johnson that he intended only to grab the marijuana and run), we must examine the evidence in the light most favorable to the verdict. (*Perez, supra,* 50 Cal.4th at p. 229.) Therefore, Huston's use of the gun to

11

threaten Vincent and Alex before West shot Vincent established the requisite intent to use force or fear. Huston's contention that the evidence was insufficient that he intended to commit a robbery or aid and abet a robbery before or at the time of the killing is without merit.

B

Huston next argues there was insufficient evidence to support the special circumstance finding that the murder was committed during the commission of the robbery. Specifically, he claims the evidence was insufficient to establish (1) that he intended to aid and abet the robbery before or at the time of the killing, or (2) that he was a major participant in the crime who acted with reckless indifference to human life. In supplemental briefing, Huston further argues (3) that under recently-enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), he is not liable for felony murder because he was not a major participant in the crime who acted with reckless indifference to human life. We address each argument in turn.

1

Huston claims the evidence was insufficient to establish that he intended to aid and abet the robbery before or at the time of the killing. To prove the robbery-murder special circumstance, the prosecution was required to prove Huston formed the intent to commit the robbery or aid and abet the robbery before or at the time the victim was killed. (*People v. Valdez* (2004) 32 Cal.4th 73, 105.) In support of his claim, Huston makes the same argument, discussed above, that there was insufficient evidence to establish that he formed the intent to commit robbery or aid and abet the robbery before or at the time of the killing. Having fully discussed how the facts established Huston's intent to commit robbery before the killing, we likewise reject the argument with respect to the special circumstance finding.

12

We next turn to whether the evidence was sufficient to sustain the robbery-murder special circumstance. Huston argues the evidence was insufficient to establish that he was a major participant in the crime who acted with reckless indifference to human life.

The trial court properly instructed the jury that, to find true the robbery-murder special circumstance in a case in which the defendant was not the actual killer, the prosecution must establish: "1. The defendant's participation in the crime [here, robbery] began before or during the killing. [¶] 2. The defendant was a major participant in the crime; [¶] AND [¶] 3. When the defendant participated in the crime, he acted with reckless indifference to human life." (CALCRIM No. 703.)

The robbery-murder special circumstance applies to the actual killer and to aiders and abettors who either act with intent to kill (§ 190.2, subd. (c)) or who are major participants who act with reckless indifference to human life. (§ 190.2, subd. (d).) As the California Supreme Court noted in *People v. Banks* (2015) 61 Cal.4th 788, 798 (*Banks*), the elements of the robbery-murder special circumstance in section 190.2, subdivision (d), come from the United States Supreme Court's decision in *Tison v. Arizona* (1987) 481 U.S. 137 [95 L.Ed.2d 127]. In *Tison*, the court held that the death penalty cannot be constitutionally imposed on a nonkiller aider and abettor unless that person either intended to kill or was a major participant who acted with reckless indifference to human life. (*Id*. at p. 158, fn. 12.) This language was codified in section 190.2, subdivisions (c) and (d), by the electorate as part of Proposition 115 and it applies to both the imposition of the death penalty and life without the possibility of parole. (*Banks,* at pp. 797-798, 800, 804.)

Major participation requires that a "defendant's personal involvement must be substantial, greater than the actions of an ordinary aider and abettor to an ordinary felony murder." (*Banks, supra,* 61 Cal.4th at p. 802.) Here it is clear that Huston was a major participant in the robbery. There is substantial evidence of the following: Huston said he

knew where to get marijuana, he had a gun at Stroupe's duplex, he told Briesha the plan was to take the gun and commit a robbery to get some marijuana, he contacted Vincent, he stalled inside Vincent's car until West arrived, he pulled out the handgun in his possession and mentioned not wasting time, he jumped into the front seat of the Acura and crashed into other cars, and he took the amplifier.

As for reckless indifference, the court in *Banks* observed: "Reckless indifference to human life 'requires the defendant be "subjectively aware that his or her participation in the felony involved a grave risk of death." ' " (*Banks, supra,* 61 Cal.4th at p. 807, italics omitted.) "Awareness of no more than the foreseeable risk of death inherent in any armed crime is insufficient; only knowingly creating a 'grave risk of death' satisfies the constitutional minimum." (*Id.* at p. 808.) Recently, the California Supreme Court adopted the Model Penal Code definition of reckless indifference, which requires that the defendant " 'consciously disregard[] a substantial and unjustifiable risk' " of death and that the risk " 'be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.' " (*People v. Clark* (2016) 63 Cal.4th 522, 617 (*Clark*).) This definition recognizes that, in addition to the subjective element of reckless indifference, there is also an objective element. (*Id.* at p. 622.) "[R]ecklessness is not determined merely by reference to a defendant's subjective feeling that he or she is engaging in risky activities. Rather, recklessness is also determined by an objective standard, namely what 'a law-abiding person would observe in the actor's situation.' " (*Id.* at p. 617.)

Whether there is substantial evidence supporting a finding of reckless indifference to human life is a question that requires consideration of the totality of the circumstances. (*Banks, supra,* 61 Cal.4th at p. 802.) We consider circumstances such as (1) knowledge of weapons, along with use and number of weapons; (2) physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) duration of the felony;

14

(4) defendant's knowledge of the co-perpetrator's likelihood of killing; and (5) defendant's efforts to minimize the risks of the violence during the felony. (*Clark, supra,* 63 Cal.4th at pp. 618-623; see also *In re Scoggins* (2020) 9 Cal.5th 667, 677.)

Huston argues this was a "planned theft that did not anticipate the use of violence; rather, [Huston] simply planned on snatching the marijuana and running . . . ." And he asserts that "the jury specifically found the gun-use allegation not true . . . ." As we noted above, the jury's firearm-use finding does not prevent us from considering the evidence that Huston had a firearm and threatened to use it before West shot Vincent. Huston's argument is unpersuasive because it considerably understates his involvement in the planning and execution of the robbery.

Huston also claims that West's decision to shoot Vincent was spontaneous and "self-volitional." However, it was Huston's planning and execution of the robbery with multiple perpetrators and firearms that led to a grave risk that Vincent would be killed. Huston was the primary mover in planning the armed robbery. He initiated the robbery and participated in the armed threats after West came to the car. Beyond these assertions, Huston does not attempt to analyze the relevant circumstances noted in *Clark*.

Because Huston's argument is not supported by the evidence construed in the light most favorable to the jury's verdict, and because Huston does not attempt to analyze the circumstances noted in *Clark, supra,* 63 Cal.4th at pages 618-623, we need not undertake an analysis of those circumstances. Huston's contention that the evidence was insufficient to support the special circumstance verdict is without merit.

## 3

In supplemental briefing, Huston claims that under recently-enacted Senate Bill 1437, he is not liable for felony murder because he was not a major participant in the crime who acted with reckless indifference to human life.

Recently-enacted Senate Bill 1437 "amend[s] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder

15

liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Huston contends we must apply Senate Bill 1437 retroactively in this appeal and vacate his felony-murder conviction.

However, the sole procedure for seeking an order vacating a felony-murder conviction under Senate Bill 1437 is to file a petition in the sentencing court. Section 1170.95, enacted under Senate Bill 1437, provides only for a postjudgment procedure to obtain relief. (*People v. Gentile* (2020) 10 Cal.5th 830, 839 (*Gentile*); *People v Martinez* (2019) 31 Cal.App.5th 719, 727-729 (*Martinez*).) The judgment in this case will not be final until after Huston's appeal rights have been exhausted. (*People v. Garcia* (2018) 28 Cal.App.5th 961, 973.) Additionally, section 1170.95 provides for a hearing in which additional evidence may be taken. (§ 1170.95, subd. (d)(3).) Considering on appeal whether a defendant qualifies for relief under Senate Bill 1437 would short-circuit that procedure. Accordingly, this Senate Bill 1437 contention is not cognizable on direct appeal from the conviction.[3] (*Gentile, supra,* 10 Cal.5th at pp. 839, 851-852.)

C

Stroupe contends (1) the evidence was insufficient to support a finding that he was a major participant who acted with reckless indifference to human life, (2) under recently-enacted Senate Bill 1437 he is not liable for felony murder because he was not

---

[3] Huston filed a petition to vacate his felony-murder conviction in the trial court, citing Senate Bill 1437, during the pendency of this appeal. The trial court denied the petition "without prejudice to renewing the motion should defendant Huston in the future obtain a reversal of the special circumstance finding." This court dismissed Huston's appeal from that order because the trial court did not have jurisdiction to consider the petition. (*People v. Huston* (Apr. 17, 2020, C089573) [nonpub. opn.].)

a major participant in the crime who acted with reckless indifference to human life, and (3) he is constitutionally entitled to the benefit of Senate Bill 1437 on appeal.

1

Stroupe's contention that the evidence was insufficient to support a finding that he was a major participant who acted with reckless indifference to human life is premised on his assertion that he was not suspect number three. Stroupe therefore argues the evidence "did not place [him] within the inner core of the robbery/murder." We disagree.

As for whether Stroupe was suspect number three who held a firearm on Alex and tried to pistol whip him, Stroupe argues Cooper is a more likely candidate for suspect number three because Cooper's complexion and height were closer to Alex's description of suspect number three and because Stroupe denied doing anything beyond acting as a lookout. But the argument that suspect number three was more likely Cooper is not an argument that the evidence was insufficient for the jury to conclude that suspect number three was, indeed, Stroupe. We review the evidence in the light most favorable to the judgment. (*Perez, supra,* 50 Cal.4th at p. 229.)

The evidence was sufficient to sustain the special circumstance finding if the jury could reasonably have concluded, contrary to Stroupe's argument, that suspect number three was Stroupe. Alex described suspect number three as dark-skinned, six feet tall, skinny, with a short afro. While Stroupe claimed in his testimony that Cooper has darker skin than Stroupe, that fact, even if believed by the jury, did not make it unreasonable for the jury to determine that Stroupe fit the description of suspect number three. As seen in a photograph admitted into evidence, Cooper wore dreadlocks (as did suspect number four), while suspect number three (like Stroupe) had a short afro.

Stroupe generally fit the description of suspect number three because he was five feet nine inches tall, weighed 175 pounds, was dark-skinned, and had short hair. Moreover, Stroupe's palmprint was found in Vincent's car, a circumstance Stroupe fails to mention in his sufficiency-of-the-evidence argument. Therefore, it was reasonable for

17

the jury to conclude Stroupe was suspect number three, who was involved in the "inner core" of the crimes. In addition, the jury found Stroupe used a firearm, which is consistent with a jury finding that he was suspect number three.

As Stroupe makes no other argument that he was not a major participant who acted with reckless indifference to human life, his contention lacks merit.

2

Like Huston, Stroupe contends the felony-murder conviction should be vacated under recently-enacted Senate Bill 1437 because he was not the actual killer, did not intend to kill, and was not a major participant in the underlying crime who acted with reckless indifference to human life. (§ 189, subd. (e).) As we did with respect to Huston, we conclude this Senate Bill 1437 contention is not cognizable on direct appeal from the conviction.[4] (*Gentile, supra,* 10 Cal.5th at pp. 839, 851-852; *Martinez, supra,* 31 Cal.App.5th at pp. 727-729.)

3

In further supplemental briefing, Stroupe argues, under constitutional principles, we must apply the new definition of murder now and not relegate him to the remedy provided in section 1170.95. Stroupe claims that, if the court concludes he may raise the Senate Bill 1437 redefinition only in a post-conviction petition for resentencing, that limitation will (1) deny him his right to a jury trial, (2) constitute a double jeopardy violation, (3) deny him the right to equal protection and due process, and (4) violate ex post facto principles.

---

[4] Stroupe filed a petition to vacate his felony-murder conviction in the trial court, citing Senate Bill 1437, during the pendency of this appeal. The trial court denied the petition "without prejudice to renewing the motion should defendant Stroupe in the future obtain a reversal of the special circumstance finding."

18

Stroupe contends that limiting him to the post-conviction petition procedure would violate his Sixth Amendment right to a jury trial. The California Supreme Court rejected this argument in *Gentile, supra,* 10 Cal.5th at pages 856-857. (See also *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156.)

Stroupe further contends that limiting him to the post-conviction procedure would violate double jeopardy principles because the petition procedure requires a new adjudication with new evidence on an offense that has already been tried once to a jury. However, when the question of insufficiency of the evidence arises because of a retroactive change in the law, constitutional prohibitions against double jeopardy do not prevent a retrial. (*People v. Lopez* (2019) 38 Cal.App.5th 1087, 1115-1116, review granted Nov. 13, 2019, S258175.)

In addition, Stroupe contends that limiting him to the post-conviction procedure is equivalent to the denial of direct appeal for insufficiency of the evidence based on the record on appeal, and, therefore, it is a denial of due process and equal protection. But the right to appeal is a statutory right (*Abney v. United States* (1977) 431 U.S. 651, 656 [52 L.Ed.2d 651, 658]), and the relevant statute, Penal Code section 1170.95, does not give Stroupe the right to review under the new statutory definition of murder on direct appeal but instead relegates him to a post-conviction petition.

Stroupe also contends that limiting him to the post-conviction procedure would violate ex post facto principles because it denies him the retroactive ameliorative effect of the statute. However, the ex post facto clause does not apply here. The ex post facto clause bars the application of a new law to the disadvantage of a defendant after the fact (*In re Arafiles* (1992) 6 Cal.App.4th 1467, 1482), but here, Stroupe would have us retroactively apply an ameliorative measure. Thus, the post-conviction procedure would not violate ex post factor principles because he may receive an ameliorative effect, if he is eligible, through the post-conviction petition procedure. There is no possibility he will be retroactively disadvantaged.

19

Stroupe and Huston argue the instructions as provided to the juries were conflicting regarding the mental state required to support the special circumstance.

As we have explained, a person who aids and abets in a felony resulting in the victim's death, but who is not the actual killer, commits the felony-murder special circumstance only if the person intended to kill or was a major participant in the crime who acted with reckless indifference to human life. (§ 190.2, subd. (d); *People v. Mil* (2012) 53 Cal.4th 400, 408-409.) Stroupe and Huston contend the instructions as given in this case allowed the juries to find true the robbery-murder special circumstance without finding they either intended to kill the victim or acted as a major participant with reckless indifference to human life. Specifically, they assert CALCRIM No. 730 omitted the major participant and reckless indifference elements and therefore contradicted CALCRIM No. 703, which included those elements.

We review the correctness of jury instructions by considering the entire charge to the jury. (*People v. Bolin* (1998) 18 Cal.4th 297, 328.) We presume the jurors are intelligent and capable of understanding and correctly applying the trial court's instructions. (*People v. Gonzales* (2011) 51 Cal.4th 894, 940.) We inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the law. (*Boyde v. California* (1990) 494 U.S. 370, 380 [108 L.Ed.2d 316].) We will reverse only if it is reasonably likely the instructions as a whole caused the jury to misunderstand the applicable law. (*Estelle v. McGuire* (1991) 502 U.S. 62, 72-74 [116 L.Ed.2d 385].)

The trial court instructed the jury with CALCRIM No. 730 as follows:

"The defendant is charged with the special circumstance of murder committed while engaged in the commission of attempted robbery in violation of Penal Code section 190.2[, subdivision ](a)(17).

"To prove that this special circumstance is true, the People must prove that:

"1. The defendant committed or attempted to commit, or aided and abetted robbery;

"2. The defendant intended to commit, or intended to aid and abet the perpetrator in committing robbery;

"3. Shaquille Huston, Dayvon Stroupe, Antwain West or Gregory Cooper did an act that caused the death of another person. If the defendant did not personally commit robbery, then a perpetrator, whom the defendant was aiding and abetting before or during the killing personally committed robbery.

"4. The act causing the death and the robbery or attempted robbery were part of one continuous transaction;

"AND

"5. There was a logical connection between the act causing the death and the robbery. The connection between the fatal act and the robbery must involve more than just their occurrence at the same time and place.

"To decide whether the defendant committed or attempted to commit robbery, please refer to the separate instructions that I will give you on that crime. To decide whether the defendant aided and abetted the crime, please refer to the separate instructions that I have given you on aiding and abetting. You must apply those instructions when you decide whether the People have proved this special circumstance.

"The defendant must have intended to commit, or aided and abetted the felony of robbery before or at the time of the act causing the death."

While CALCRIM No. 730 did not mention the major participant and reckless indifference elements, CALCRIM No. 703 made it clear that the jury was required to consider whether those elements were present if the defendant was not the actual killer and did not intend to kill. The trial court instructed the jury using CALCRIM No. 703 as follows, in pertinent part:

21

"If you decide that a defendant is guilty of first degree murder but was not the actual killer, then, when you consider the special circumstance of robbery, you must also decide whether the defendant acted either with intent to kill or with reckless indifference to human life.

"In order to prove this special circumstance for a defendant who is not the actual killer but who is guilty of first degree murder as an aider and abettor, the People must prove either that the defendant intended to kill, or the People must prove all of the following:

"1. The defendant's participation in the crime began before or during the killing;

"2. The defendant was a major participant in the crime;

"AND

"3. When the defendant participated in the crime, he acted with reckless indifference to human life."

In closing argument, the prosecutor made it clear to both juries that, if the jury found the defendant was not the actual killer, the jury had to determine whether each defendant intended to kill or was a major participant who acted with reckless indifference to human life.

Reviewing the jury instructions as a whole, as well as the arguments of counsel, we conclude there is no reasonable likelihood the jury interpreted the instructions as allowing it to find the special circumstance true without also finding the defendant was the actual killer, intended to kill, or was a major participant who acted with reckless indifference to human life.

IV

Stroupe contends the trial court erred by giving an instruction concerning eyewitness identification testimony because there was no evidence he was identified by an eyewitness and the instruction created the inference there had been an identification of Stroupe without any basis in the record.

22

A trial court commits error when it gives an instruction that is not supported by the evidence. (*People v. Debose* (2014) 59 Cal.4th 177, 205.) However, any such error is harmless if it is not reasonably probable the jury would have reached a result more favorable without the error. (*Id*. at pp. 205-206.) Furthermore, a defendant forfeits appellate consideration of instructional error if the defendant did not object in the trial court. (*People v. Battle* (2011) 198 Cal.App.4th 50, 64 (*Battle*).)

The trial court gave CALCRIM No. 315 to Stroupe's jury concerning the jury's evaluation of identification testimony. The first sentence of that instruction stated: "You have heard eyewitness testimony identifying the defendant." Although there is no evidence that any eyewitness at the scene of the crimes identified Stroupe, he did not object to the instruction.

Nevertheless, Stroupe now argues the eyewitness identification instruction "sent a clear message that [Stroupe] had been identified" and "create[d] evidence where none existed." But Stroupe overstates the effect of the instruction. He admitted in his statement and during his testimony that he was present at the scene, even if he denied being one of the actual perpetrators with a firearm, so there was no dispute concerning whether Stroupe was involved. Also, the trial court instructed the jury to disregard any instructions that did not apply to the facts as found by the jury. (CALCRIM No. 200.) Under these circumstances, it is not reasonably probable Stroupe would have obtained a more favorable result if the trial court had not given the eyewitness identification instruction the way it did. As a result, the error did not affect Stroupe's substantial rights, and thus he forfeited consideration of the issue on appeal by failing to object to the instruction.

Buried within Stroupe's contention that the trial court committed prejudicial error by instructing the jury on eyewitness identification is a one-sentence contention that, if trial counsel forfeited the issue by failing to object to the instruction, trial counsel provided constitutionally ineffective assistance of counsel. We conclude Stroupe

23

forfeited this ineffective-assistance-of-counsel contention by failing to raise it separately under an appropriate heading, showing the nature of the question to be presented and the point to be made. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4.) And, in any event, an ineffective-assistance-of-counsel contention fails on this point because of the absence of prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694, 697 [80 L.Ed.2d 674].)

V

Huston contends, and the Attorney General agrees, we must strike the $400 parole revocation fine imposed but suspended under section 1202.45 because he was sentenced to a term of life without possibility of parole. We agree. When a defendant is sentenced to a term of life without possibility of parole, a parole revocation fine under section 1202.45 is unauthorized. (*Battle, supra,* 198 Cal.App.4th at p. 63.) We recognize that Huston was also sentenced to a determinate term of two years for the robbery, but that term was stayed under section 654. When "[a]t present, defendant's 'sentence' does not allow for parole," a parole revocation fine is unauthorized. (*People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1185.) We will strike Huston's parole revocation fine.

VI

The abstract of judgment filed in Huston's case indicates that he was sentenced under section 667, subds. (b)-(i), the three strikes law. Huston contends, and the Attorney General correctly agrees, this reference must be deleted because Huston was not sentenced under the three strikes law. We will direct the trial court to correct the abstract of judgment.

DISPOSITION

As to Stroupe, the judgment is affirmed. As to Huston, the judgment is modified to strike the parole revocation fine imposed under section 1202.45, and the judgment is affirmed as modified. The trial court is directed to amend Huston's abstract of judgment

24

to reflect that the parole revocation fine is stricken and to correct the abstract of judgment to delete reference to the three strikes law.  The trial court is further directed to send a certified copy of the amended and corrected abstract of judgment to the Department of Corrections and Rehabilitation.


                                                        /S/

                                                 MAURO, Acting P. J.


We concur:


       /S/

MURRAY, J.


       /S/

RENNER, J.